IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

25 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 1:12-CR-435-CMH |
| | ) | |
| SUSAN LEE GROSS, | ) | |
| a.k.a. "Susan Leegross," | ) | |
| a.k.a. "Ju Mee Lee-Gross," | ) | |
| a.k.a. "Ju Mee Lee Gross," | ) | |
| a.k.a. "Ju Mee Lee," | ) | |
| a.k.a. "Nancy," | ) | |
| a.k.a. "Coco," | ) | |
| a.k.a. "Chanel," | ) | |
| a.k.a. "Beautiful," | ) | |
| a.k.a. "Sky," | ) | |
| a.k.a. "Flower," | ) | |
| a.k.a. "Butterfly," | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The United States and the defendant, agree that at trial the United States would have

proven the following facts beyond a reasonable doubt with admissible and credible evidence.

1.      From in and around February 2011 to in and around May 2012, in Fairfax County,

in the Eastern District of Virginia, and elsewhere, defendant Susan Lee Gross, did knowingly

combine, conspire, confederate, and agree with Jin Seob Oh, a woman whose initials are "JSK,"

and others: to transport an individual in interstate and foreign commerce with intent that such

individual engage in prostitution and in any sexual activity for which a person can be charged

with a criminal offense, in violation of Title 18, United States Code, Section 2421; and to

persuade, induce, and entice an individual to travel in intestate and foreign commerce to engage

in prostitution and any sexual activity for which a person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422, all in violation of Title 18, United States Code, Section 371.

2.     From in and around February 2011 to in and around May 2012, in Fairfax County, in the Eastern District of Virginia, and elsewhere, defendant Susan Lee Gross, did knowingly combine, conspire, confederate, and agree with Jin Seob Oh, a woman whose initials are "JSK," and others, to commit the following offenses against the United States:

a.     to knowingly conduct financial transactions affecting interstate and foreign commerce, involving the proceeds of a specified unlawful activity, with the intent that the transactions promote the carrying on of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

b.     to knowingly conduct financial transactions affecting interstate and foreign commerce, and involving the proceeds of a specified unlawful activity, where such transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

In both instances, the specified unlawful activity involved was transportation of an individual in interstate commerce for purposes of prostitution and unlawful sexual activity, and the persuasion, inducement, and enticement of any individual to travel in interstate commerce for purposes of prostitution and unlawful sexual activity, in violation of Title 18, United States Code, Sections

2

2421 and 2422, all in violation of Title 18, United States Code, Section 1956(h).

3.     Defendant Susan Lee Gross (hereinafter "Lee Gross") was an immigrant from the Republic of Korea (South Korea) who became a naturalized citizen through a fraudulent marriage to a man whose initials are "MSG." The was the owner and operator of a massage parlor known as "Peach Therapy," from around February 2011 to around May 2012, which was located at 5053B Backlick Road in Annandale, Virginia.

4.     Co-conspirator Jin Seob Oh was a citizen of South Korea and was the owner and operator of an unlicensed taxi business known as "Royal Taxi."

5.     Co-conspirator "JSK" is a woman who, between about April 2011 and October 2011, worked at Peach Therapy as a manager and supervisor. JSK's duties included selecting which employees would service particular customers. JSK would also greet customers and collect the "house fee" for the services. In addition, at Lee Gross's direction, JSK booked the flight of at least one woman so that this woman could travel from North Carolina to Virginia for the purpose of performing unlawful sexual activity at Peach Therapy.

6.     Lee Gross, and women who worked for Lee Gross at Peach Therapy, provided sexual services to paying customers, including sexual intercourse, fellatio, and masturbation of customers, and permitted customers to touch the breasts and vagina of whatever woman serviced a particular customer.

7.     On average, Peach Therapy had approximately 30 customers per day. Customers of Peach Therapy typically paid a "house fee" of around $80 for one hour, or $60 for one-half hour, for sexual services, which Lee Gross received. In addition, customers would pay "tips" between approximately $20 and $140 to be masturbated; between approximately $150 to $200

3

for an employee to perform oral sex on the customer; and between approximately $200 to $400 for sexual intercourse. Some of the women earned around $800 per day.

8.      Lee Gross , JSK, and employees of Peach Therapy, referred to masturbation of customers as "number 1;" performing oral sex on a customer was called "number 2;" and sexual intercourse was known as "number 3."

9.      Government agents learned the identity of Peach Therapy's customers via a number of methods, including customer lists kept by women who worked at Peach therapy. Many of the customers of Peach Therapy were married men. Most customers paid with cash, but to assist married men who paid with credit card to hide their activities from their wives, credit card charges for Peach Therapy appeared as being incurred by "South Blue Bay, Inc." Customers of Peach Therapy included a pastor, an obstetrician-gynecologist, employees of defense contractors, commissioned and non-commissioned officers of the U.S. military, and individuals who held security clearances.

10.     Some of the women who worked at Peach Therapy worked there only approximately two to four weeks before leaving to work for other massage establishments. Some of the women who temporarily ceased working at Peach Therapy later returned to work at Peach Therapy.

11.     Since around September 15, 2011, Lee Gross rented an apartment in Annandale, Virginia to house some of the workers from Peach Therapy. Co-conspirator Jin Seob Oh sometimes drove Lee Gross and the other women who worked at Peach Therapy to and from this apartment.

4

12.     Lee Gross would arrange for new women to work at Peach Therapy and many of these women frequently would travel via bus from Chinatown in New York City to Chinatown in Washington, D.C.

13.     Lee Gross and JSK contracted with a man in Atlantic City, New Jersey, whose initials are "CWL," for Internet advertisements for Peach Therapy placed on Backpage.com, Craigslist.com, EroticMP.com, RubMaps.com, and USASexGuide.com. The advertisements on Backpage.com and Craigslist.com featured photographs of attractive, Asian women and stated that Peach Therapy was "the place to get LUCKY!" Lee Gross and JSK also asked CWL to upload favorable reviews of sexual services obtained at Peach Therapy on EroticMP.com, RubMaps.com, and USASexGuide.com. In addition, on these same Internet sites, customers of Peach Therapy posted reviews of the sexual services performed at Peach Therapy. In the presence of JSK and other employees of Peach Therapy, Lee Gross sometimes read these reviews. Lee Gross and JSK paid CWL for creating the Internet advertisement by depositing funds directly into CWL's TD bank account and the bank account of CWL's girlfriend. Lee Gross typically paid CWL $1,770 per month for Internet advertising.

14.     From at least February 2011 to April 2012, Lee Gross used co-conspirator Jin Seob Oh as the primary taxi driver for the women who worked at Peach Therapy and encouraged or instructed the women who worked at Peach Therapy to obtain transportation only from co-conspirator Jin Seob Oh. This was done to minimize the number of people who knew details about the women who worked at Peach Therapy, the sexual nature of the business, and when and how they were transported to Peach Therapy. Lee Gross trusted co-conspirator Jin Seob Oh because, among other reasons, Jin Seob Oh previously purchased condoms for Lee Gross, which

5

Lee Gross used when she worked as a prostitute at massage establishments prior to purchasing Peach Therapy.

15.     Between approximately five and ten occasions, in 2011, at the instruction of the Lee Gross, co-conspirator Jin Seob Oh transported in his vehicle women—who were to be employed at Peach Therapy performing sexual services—from Chinatown in Washington, D.C. to Peach Therapy in Annandale, Virginia. In return for transporting these women, Jin Seob Oh was paid by these women around $40 per trip. These women came to the Commonwealth of Virginia because Lee Gross offered them employment at Peach Therapy performing unlawful sexual acts for money.

16.     On at least two occasions in 2011, at the instruction of Lee Gross, co-conspirator Jin Seob Oh transported in his vehicle women, who were to be employed at Peach Therapy performing sexual services, from Flushing, New York and New Jersey to Annandale, Virginia. Lee Gross provided co-conspirator Jin Seob Oh with the address from which he was to transport each woman, sometimes through text messages which Jin Seob Oh has retained on his cellular telephone. For transporting these women, the women paid co-conspirator Jin Seob Oh approximately $500 per trip. These women came to the Commonwealth of Virginia because Lee Gross offered them employment at Peach Therapy performing unlawful sexual services for money.

17.     On one occasion, in 2011, co-conspirator Jin Seob Oh told Lee Gross about a woman who was willing to perform sexual services at Peach Therapy. Lee Gross agreed to hire this woman and Jin Seob Oh transported in his vehicle this woman, who was to be

6

employed at Peach Therapy performing sexual services for money, from Palisades Park, New Jersey to Annandale, Virginia.

18.     In 2011, one of the women who performed sexual services for money was known as "Sunny," and Sunny would travel to and from Georgia, Texas, North Carolina, and Virginia, and Lee Gross knew that Sunny would make these trips. On approximately four occasions, co-conspirator Jin Seob Oh picked up Sunny from the Dulles International Airport and drove her to Peach Therapy with knowledge that Sunny was coming from a state other than Virginia to work for Lee Gross providing unlawful sexual services at Peach Therapy. In addition, co-conspirator Jin Seob Oh also transported in his vehicle from Dulles International Airport another woman who worked at Peach Therapy providing unlawful sexual services.

19.     The women transported by co-conspirator Jin Seob Oh to and from Peach Therapy include the following: "Angie," "Candy," "Cherry," "Jennifer," "Young," "Sunny," "Yuku," "Mee-Mee," and "Bebe," and Lee Gross knew that each of these women provided sexual services to paying customers at Peach Therapy.

20.     Lee Gross with the assistance of JSK, booked a flight for "Sunny" to fly from Charlotte, North Carolina to Virginia for the purpose of Sunny performing unlawful sexual services at Peach Therapy. Lee Gross initially paid for the flight, but Sunny later reimbursed Lee Gross.

21.     Peach Therapy had a video surveillance system that allowed Lee Gross, JSK, and others inside of Peach Therapy to see on a closed-circuit television monitor when the police were present outside of Peach Therapy. This allowed Lee Gross, JSK, and other employees of Peach

7

Therapy to warn employees and patrons about the presence of law enforcement agents so that they could put their clothes on.

22.     Lee Gross, Jin Seob Oh, and JSK, knew the sexual nature of the business at Peach Therapy and that the women whom were transported in interstate commerce were coming to work at Peach Therapy to engage in prostitution and sexual activity for which a person can be charged with a criminal offense.

23.     Lee Gross and Jin Seob Oh deposited thousands of dollars into Bank of America accounts at a Bank of America branch in or near Annandale, Virginia. Lee Gross and Jin Seob Oh knew and believed that the funds deposited into these accounts were the proceeds of unlawful activity. One of the accounts into which this money was deposited was opened by Lee Gross in her own name, while other accounts into which the proceeds was deposited were opened in the name of Lee Gross's daughter. Lee Gross used the proceeds deposited in these accounts to conduct transactions in an effort to conceal the unlawful source of the funds and to promote the carrying on of unlawful activity.

24.     Lee Gross and JSK understood that the funds deposited in the Bank of America accounts were the proceeds of the commercial sexual activity that occurred at Peach Therapy. Lee Gross, JSK, and Jin Seob Oh were aware of the bank's currency transaction reporting requirements, so Jin Seob Oh and Lee Gross generally avoided any single deposit exceeding $10,000 to ensure that no currency transaction report would be filed and that the deposits would not be scrutinized by law enforcement or the United States government.

25.     Lee Gross also deposited proceeds of unlawful activity into a safe deposit box at a Bank of America branch located on Columbia Pike in Annandale, Virginia. These deposits were

made in an effort to conceal and disguise the nature, location, source, ownership and the fact that Lee Gross exercised control over these proceeds of unlawful activity.

26.     Once the proceeds were deposited in the Bank of America accounts, Lee Gross used some of these funds to conduct transactions in intestate commerce to promote her prostitution business at Peach Therapy, such as paying the bills and expenses related to Peach Therapy.  Among other things, these funds were used to pay the rent for the building in which Peach Therapy operated and rent for the apartment where some of the workers from Peach Therapy were housed.  In a further effort to launder proceeds of unlawful activity, Lee Gross made checks from one of the Bank of America accounts payable to one of the women who performed sexual services at Peach Therapy, and that woman, in turn, cashed the checks and gave SLG the money received from the checks.

27.     In an effort to avoid detection by law enforcement agents, Lee Gross operated Peach Therapy in the name of a female citizen of South Korea from Flushing, New York whose initials are HRJ.  In 2011, at the request of Lee Gross, Jin Seob Oh drove HRJ to an office of the Commonwealth of Virginia Department of Motor Vehicles so that HRJ could obtain a Virginia driver's license so that HRJ could, in turn, open a Bank of America account into which proceeds of unlawful activity could be deposited.  Jin Seob Oh drove HRJ to a Bank of America Branch in Annandale and the two opened a bank account into which Lee Gross deposited proceeds of unlawful activity.  The amount of money laundered by Lee Gross and the conspiracy was at least $248,409.00.

28.     The acts taken by the defendant in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to

9

violate the law and were not committed by mistake, accident, or other innocent reason. The
defendant further acknowledges that the defendant is obligated under the defendant's plea
agreement to provide additional information about this case beyond that which is described in
this Statement of Facts.

29.     The Statement of Facts shall be admissible as a knowing and voluntary confession
in any proceeding against the defendant regardless of whether the plea agreement is presented to
or accepted by a Court. Moreover, the defendant waives any rights that the defendant may have
under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal
statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

30.     This Statement of Facts includes those facts necessary to support the plea
agreement between the defendant and the government. It does not include each and every fact
known to the defendant or the government, and it is not intended to be a full enumeration of all
of the facts surrounding the defendant's case.

                                Respectfully submitted,

                                Neil H. MacBride
                                United States Attorney

        By:     _____

                                Michael J. Frank
                                Assistant United States Attorney

10

## Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Susan Lee Gross
Defendant

## Defense Counsel's Signature

I am the attorney for the defendant. I have carefully reviewed the above Statement of Facts with the defendant. To my knowledge, the defendant's decision to stipulate to these facts is informed and voluntary.

Mr. Bill R. Hicks, Esquire
Defense Counsel

11